The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Greg M. Willis. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is sixty-six years old, having a date of birth of May 18, 1929. She has an eleventh grade education. Prior to working for defendant, AVX Corporation, plaintiff worked in a dime store and in a cotton mill. She worked for defendant from March 14, 1962 through the date of her injury on August 4, 1992.
2. Plaintiff held many different jobs during her thirty-year career with defendant. During this time she was exposed to many different industrial chemicals including Acetone, Kaolin, Isopropanol Alcohol and Hydrochloric acid.
3. Prior to August 1992 plaintiff had an extensive medical history. She was an insulin-dependent diabetic and suffered from hypertension. On July 21, 1992 plaintiff complained of shortness of breath, which was diagnosed as being a cardiac problem. There was no medical history of any disabling pulmonary disease. Notwithstanding her pre-existing conditions, plaintiff was able to and did fully perform her regular job duties prior to August 4, 1992.
4. On the morning of August 4, 1992 plaintiff was operating a spray gun containing a mixture of Acetone and Kaolin while in the course and scope of her employment. While operating the spray gun it became clogged. While plaintiff was attempting to unclog the gun she was accidentally sprayed in the face with a mixture of Acetone and Kaolin, which she inhaled. Plaintiff immediately experienced breathing difficulty. Several witnesses observed plaintiff in distress and attempted to help her. She was taken to the dispensary, and from there to Kaiser-Permanente for medical treatment. Because the plant nurse was not on duty that day, normal procedures for reporting the incident were not followed.
5. Inhalation of Kaolin can cause irritation of respiratory irritation, but also dizziness, weakness, fatigue, nausea, headache, unconsciousness, and even asphyxiation. As a result of her occupational exposure when the spray gun sprayed plaintiff in the face releasing the chemicals Acetone and Kaolin, plaintiff has suffered from many of these symptoms mentioned above.
6. Medical treatment and diagnosis revealed a chronic restrictive, pulmonary disease and irritation of the respiratory system, most likely caused by inhalation of industrial chemicals. In July 1992 plaintiff was examined by Dr. Drobnes who noted that plaintiff was suffering from a possible restrictive disease.
7. In October 1992, following the incident, plaintiff was referred by Kaiser-Permanente to an in-house allergist, Dr. H. Randy Schwartz. Dr. Schwartz' report indicated that the onset of the condition coincided with a spray of chemical to the face consistent with a possible restrictive disease. He found no evidence of allergies. His final comments were that plaintiff should consider input from a pulmonologist.
8. Based on this comment, plaintiff was referred to Dr. Robert Alan Durr, a pulmonologist. Dr. Durr treated plaintiff on numerous occasions and concluded that she was suffering from restrictive, pulmonary disease and chronic bronchitis. Dr. Durr also concluded to a reasonable degree of certainty that plaintiff's exposure to Acetone likely contributed to her current symptoms of chronic bronchitis and significantly aggravated a pre-existing condition. The undersigned gives greater weight to this opinion.
9. Following the incident on August 4, 1992, plaintiff's condition deteriorated to the point that by the time of the hearing plaintiff could not do normal activities at least four out of seven days. From August 1992 through 1993 plaintiff's condition was such that she was often short of breath and had difficulty getting up in the morning. Plaintiff took early retirement on June 30, 1993 because of the lingering affects of her exposure to industrial chemicals and her inability to sustain the work of her employment.
10. Subsequent to this accidental injury, plaintiff was never offered a job with defendant corporation or with any other employer within her limitations. Although defendant has a review panel which can be convened to determine what other jobs may be available to an employee with limitations, such a panel was never convened. Plaintiff was also never contacted by any vocational consultant or offered any retraining.
11. Because the disability insurance carrier determined that plaintiff's injuries were work-related, she received no medical disability benefits. Defendants denied the plaintiff's workers' compensation claim and paid no benefits.
12. As a supplement to her income, plaintiff has been an owner of a tavern since 1979. Prior to the incident of August 4, 1992 plaintiff would work nights and weekends at the tavern. Following the incident, plaintiff was limited to visiting the tavern on few occasions and only to visit with friends, check on the business, and get out of the house. Occasionally she would help out for limited periods of time if she felt well enough, but she had no fixed schedule and she was free to come and go as she needed or wanted. Her nephew now runs the business for her. She has not worked in competitive employment since the incident on August 4, 1992.
13. As a result of plaintiff's work-related injury, medical care has been and will be required. Future medical treatment will include indefinite use of inhaled bronchodilators and steroids. Annual x-rays, pulmonary function testing, and flu and pneumonia vaccinations will also be required.
14. Plaintiff's injury by accident with defendant-employer exposed her to Acetone and Kaolin chemicals which were characteristic of and peculiar to her particular trade, occupation or employment and to the risk of developing chronic bronchitis.
15. As a result of plaintiff's injury by accident, pre-existing medical conditions were exacerbated, she has been unable to return to and sustain any previous employment which she has held and there is no credible evidence that competitive work is available for someone of plaintiff's age, education, background, and work experience, having her physical limitations, much less that plaintiff can obtain the same in an open and competitive labor market.
16. As a result of her injury by accident, plaintiff experiences remissions and exacerbations in her chronic pulmonary condition. She is unable to maintain regular attendance in any employment and unable to sustain full-time or competitive job duties as a result of the combination of her pre-existing and current medical conditions.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff has met her burden of proving that the incident which occurred on August 4, 1992 was an injury by accident arising out of and in the course of her employment. The incident aggravated and exacerbated a pre-existing condition. N.C.G.S. § 97-2 (6).
2. As a result of this incident plaintiff is temporarily totally disabled. She is therefore entitled to temporary total disability benefits from August 4, 1992 and continuing until defendants obtain permission from the Industrial Commission to cease disbursing benefits. However, defendants are entitled to a credit for any and all days in which plaintiff worked subsequent to her injury of August 4, 1992, if any. N.C.G.S. § 97-29.
3. The medical treatment plaintiff has received as a result of the August 4, 1992 incident was medically necessary to effect a cure, to provide relief, or to reduce any period of disability. Further, defendant shall pay all medical bills incurred or to be incurred as a result of plaintiff's injury by accident while working in the course and scope of her employment. Plaintiff is entitled to reimbursement of all past medical expenses reasonably necessary to effect a cure, provide relief, or reduce the period of disability. N.C.G.S. § 97-25.
* * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay to plaintiff the amount of $279.47 per week beginning August 4, 1992 and continuing until defendants obtain permission of the Industrial Commission to discontinue benefits. However, defendants are entitled to a credit for any and all days in which plaintiff worked subsequent to her injury of August 4, 1992, if any.
2. Defendants shall pay all of plaintiff's past and future medical expenses which are reasonably necessary to effect a cure, provide relief, or reduce disability, after such medical expenses have been submitted to and approved by the Industrial Commission.
3. A reasonable attorney fee of 25 percent of the compensation due plaintiff under this award is approved for plaintiff's counsel to be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Consideration and designation of this attorney fee contemplates that counsel for plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendants.
4. Defendants shall bear all costs.
FOR THE FULL COMMISSION
 S/ _______________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _______________________________ THOMAS J. BOLCH COMMISSIONER
S/ _______________________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 8/14/96